1:25-cr-330
Judge Rebecca R. Pallmeyer
Magistrate Judge Gabriel A. Fuentes
Random Cat 3



FILED
6/23/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | |
| JAMIL ELKOUSSA | Violation: Title 18, United States Code, Section 1343 |

## COUNTS ONE THROUGH FIVE

The SPECIAL APRIL 2025 GRAND JURY charges:

1.    At times material to this Indictment:

### COVID-19 Outbreak and Testing

a.    In or around December 2019, severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), the virus that causes coronavirus disease ("COVID-19"), began to spread throughout the world.

b.    Various tests to detect for SARS-CoV-2 were developed, including polymerase chain reaction tests ("PCR tests"), which typically were performed at clinical laboratories, and antigen tests ("rapid tests"), which could be conducted at collection sites. In order to perform PCR tests and rapid tests, collection sites obtained test specimens from patients.

### The HRSA Uninsured Program

c.    In or around March and April 2020, multiple federal laws were enacted that provided funding for COVID-19 testing for individuals for whom

1

COVID-19 testing was not covered by health insurance, including the Families First Coronavirus Response Act; the Coronavirus Aid, Relief, and Economic Security Act; and the Paycheck Protection Program and Health Care Enhancement Act.

        d.     The Health Resources and Services Administration ("HRSA") was an agency of the U.S. Department of Health and Human Services that oversaw and administered the funds appropriated through federal legislation to cover the costs of COVID-19 testing for individuals without health insurance coverage ("the HRSA Uninsured Program").

        e.     To participate in the HRSA Uninsured Program and receive reimbursement for COVID-19 testing, a provider had to attest to compliance with the Terms and Conditions for Participation in the HRSA Uninsured Program ("HRSA Terms and Conditions"). The HRSA Terms and Conditions required the provider to submit truthful information when it submitted claims for reimbursement for COVID-19 testing, and to certify that, among other things: to the best of its knowledge, the patients identified on any claim form were uninsured at the time services were provided; the provider would not be reimbursed for the test from another source; all items and services for which payment was sought were medically necessary for COVID-19 testing; and all information provided in the claim was true, accurate, and complete, to the best of the provider's knowledge.

        f.     HRSA required claims to include, among other information, a test recipient's name and date of birth; the type of test provided; the location where the

2

test was provided; and the amount to be charged to HRSA for each test. HRSA paid for COVID-19 tests for which a representation had been made that the testing was done pursuant to the HRSA Terms and Conditions, and that the information provided about the test and the test recipient was accurate. HRSA claims were processed through servers located in the state of Minnesota.

ELKOUSSA, Meridian, Meridian Collection Sites, and Laboratory A

g.     Defendant JAMIL ELKOUSSA was a resident of Orland Park, Illinois. ELKOUSSA owned Meridian Medical Staffing, Inc. ("Meridian"). ELKOUSSA was the President of Meridian. Through Meridian, ELKOUSSA purported to contract with COVID-19 test collection sites that collected specimens for PCR tests. Meridian maintained a bank account at Financial Institution A for which ELKOUSSA was a signatory and, through on or about May 24, 2021, Individual A had co-signatory authority ("Meridian Account 1"). ELKOUSSA also maintained an account at Financial Institution A in the name of Doc Technologies, Inc. ("Doc Technologies Account"), and had co-signatory authority on the account with Individual A. ELKOUSSA also maintained an account at Financial Institution A in the name of Aventus Holdings and Investments Corp. ("Aventus Account"), for which he had co-signatory authority with Individual B (ELKOUSSA's spouse) and, at times, Individual C.

h.     The Meridian Collection Sites were COVID-19 test collection sites located in the Northern District of Illinois and Florida, including at Hospital A in

3

Chicago and at the site of former Hospital B in Chicago, that purported to collect test specimens from patients for COVID-19 testing.

    i.  Laboratory A was a clinical laboratory located in Hillside, Illinois, that was registered as a provider with the HRSA Uninsured Program through at least March 2022. Laboratory A maintained an account at Financial Institution B ("Laboratory A Account 1"). When HRSA approved a claim from Laboratory A seeking reimbursement for COVID-19 testing, funds from the HRSA Uninsured Program were electronically transmitted to Laboratory A Account 1.

    j.  In or around March 2021, ELKOUSSA, through Meridian, entered into a laboratory services agreement with Laboratory A for PCR testing of COVID-19 test specimens that he and others purportedly collected from patients at the Meridian Collection Sites.

    2.  Beginning in or around March 2021, and continuing through in or around March 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMIL ELKOUSSA,

defendant herein, along with others, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from the HRSA Uninsured Program by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

4

3.    It was part of the scheme that ELKOUSSA knowingly caused Laboratory A to submit approximately $233 million in fraudulent claims to the HRSA Uninsured Program for COVID-19 PCR test specimens purportedly collected from patients at the Meridian Collection Sites, knowing that such test specimens had not been collected from the purported patients, resulting in approximately $154 million in payments to Laboratory A.

4.    It was further part of the scheme that ELKOUSSA paid individuals purportedly affiliated with the Meridian Collection Sites to make it appear as if the Meridian Collection Sites had workers who were collecting test specimens from patients, when in fact minimal to no specimen collection or testing occurred at those sites.

5.    It was further part of the scheme that ELKOUSSA submitted and caused to be submitted patient data to Laboratory A for individuals who did not exist that purportedly corresponded to COVID-19 test specimens that Meridian supplied to Laboratory A.

6.    It was further part of the scheme that ELKOUSSA knowingly caused Laboratory A to submit claims to the HRSA Uninsured Program for reimbursement for PCR tests conducted on COVID-19 test specimens purportedly collected at or through the Meridian Collection Sites, when ELKOUSSA knew that the purported test recipients did not exist.

7.     It was further part of the scheme that, of the approximately $154 million in payments Laboratory A received from the HRSA Uninsured Program based on the fraudulent claims ELKOUSSA caused Laboratory A to submit, Laboratory A transferred approximately $60.3 million of the fraudulently obtained funds into Meridian Account 1.

8.     It was further part of the scheme that, to retain and distribute the proceeds of the scheme, ELKOUSSA transferred and caused to be transferred proceeds from Meridian Account 1 into other accounts, including approximately $21 million into the Aventus Account; approximately $27 million into the Doc Technologies Account; and various amounts into the bank accounts of family members and friends.

9.     It was further part of the scheme that ELKOUSSA misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

10.    It was further part of the scheme that, for the purpose of misrepresenting, concealing, and hiding the existence, purpose, and acts done in furtherance of the scheme, ELKOUSSA caused IRS forms 1099 to be issued to entities associated with ELKOUSSA's friends, family members, and associates, to make it appear as if Meridian's payments to them were for legitimate services provided in connection with administering COVID-19 tests at the Meridian Collection Sites.

11.     On or about each of the billed dates set forth below, at Hillside, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMIL ELKOUSSA,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely electronic submissions, listed below, of Laboratory A requests for reimbursement from the HRSA Uninsured Program for PCR COVID-19 testing of test specimens purportedly collected at Meridian Collection Sites, which submissions were processed through a server located in Minnesota, each such submission constituting a separate count:

| Count | Approx. Date Billed | Purported Date of Service | Purported Patient | Purported Collection Site | Amt. Billed | Amt. Paid |
|-------|---------------------|---------------------------|-------------------|---------------------------|-------------|-----------|
| One | 12/24/21 | 10/30/21 | Z.M. | Hospital A Chicago, IL | $185 | $123.46 |
| Two | 12/31/21 | 11/2/21 | K.C. | Fmr. Hospital B Chicago, IL | $185 | $123.46 |
| Three | 2/15/22 | 12/20/21 | L.H. | Oak Forest, IL | $185 | $123.46 |
| Four | 2/15/22 | 1/29/22 | K.T. | Ft. Lauderdale, FL | $185 | $117.70 |
| Five | 2/15/22 | 12/23/21 | D.M. | Orlando, FL | $185 | $123.46 |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL APRIL 2025 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any and all right, title and interest he may have in any property, real or personal, that constitutes and is derived, directly or indirectly, from proceeds traceable to the offense, as provided in Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      The property to be forfeited includes, but is not limited to:

a.      A personal money judgment;

b.      Funds in the amount of $4,860,610.02 in the custody of the United States Marshals Service related to the sale of 2140 South Miami Ave., Miami, Florida, 33127, seized on or about June 7, 2024;

c.      Funds in the amount of $1,204,810.98 in the custody of the United States Marshals Service, related to the sale of 625 East US Highway 20, Michigan City, Indiana 46360, seized on or about July 9, 2024;

d.      Real property commonly known as 5152-60 West 127th Street, Alsip, Illinois 60803 and legally described as:

PARCEL 1:

LOT 1, IN CONCEPTS, A SUBDIVISION OF LOT 4, IN HOLIDAY PARK SUBDIVISION, OF PART OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 28, TOWNSHIP 37

8

NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. PIN#: 24-28-400-058-0000.

e.      Real property commonly known as 80 Ashton Drive, Burr Ridge,

Illinois 60527 and legally described as:

> LOT 29 IN COUNTY LINE CREEK ESTATES, BEING A SUBDIVISION OF PART OF TFIE NORTHWEST 1/4 OF SECTION 1, TOWNSHIP 37 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED FERUARY 17, 1988 AS DOCUMENT R88-015677 AND CERTIFICATE OF CORRECTION RECORDED JANUARY 17, 1990 AS DOCUMENT R90-007471, IN DU PAGE COUNTY ILLINOIS. AND LOT 30 IN COUNTY LINE CREEK ESTATES, BEING A SUBDIVISION OF PART OF THE NORTEEAST 1/4 OF SECTION 1, TOWNSHIP 37 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED FERUARY 17, 1988 AS DOCUMENT R88-015677, IN DU PAGE COUNTY, ILLINOIS. PIN#: 10-01-207-075.

f.      Real property commonly known as 102 Ashton Drive, Burr Ridge,

Illinois 60527 and legally described as:

> LOT 28 IN COUNTY LINE CREEK ESTATES, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4 OF SECTION 1, TOWNSHIP 37 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE.PLAT THEREOF RECORDED FERUARY 17, 1988 AS DOCUMENT R88-015677 AND CERTIFICATE OF CORRECTION RECORDED JANUARY 17; 1990 AS DOCUMENT R90-007471, IN DU PAGE COUNTY ILLINOIS. PIN#: 10-01-207-064.

g.      Real property commonly known as 9000 County Line Road, Burr

Ridge, Illinois 60527 and legally described as:

> THAT PART OF THE NORTHEAST 1/4 OF SECTION 1, TOWNSHIP 37 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

9

BEGINNING AT THE SOUTHEAST CORNER OF LOT 32 IN COUNTY LINE CREEK ESTATES, RECORDED FEBRUARY 17, 1988 AS DOCUMENT R88-15677, IN DU PAGE COUNTY, ILLINOIS: THENCE SOUTH 00 DEGREES 09 MINUTES 18 SECONDS EAST 235.00 FEET ALONG A LINE THAT IS 40 FEET WESTERLY AND PARALLEL WITH THE EAST LINE OF SAID QUARTER SECTION; THENCE SOUTH 89 DEGREES 48 MINUTES 31 SECONDS WEST, 849.30 FEET ALONG A LINE THAT IS 235 FEET SOUTHERLY AND PARALLEL WITH THE SOUTH LINE OF LOTS 28, 30, 31 AND 32 IN SAID COUNTY LINE CREEK ESTATES TO THE EAST LINE OF LOT 21 IN SAID SUBDIVISION; THENCE NORTH 00 DEGREES 02 MINUTES 20 SECONDS EAST, 235.00 FEET ALONG SAID EAST LINE TO THE SOUTH LINE OF SAID LOT 28; THENCE NORTH 89 DEGREES 48 MINUTES 31 SECONDS EAST, 848.50 FEET ALONG THE SOUTH LINE OF SAID LOTS 28, 30, 31 AND 32 TO THE POINT OF BEGINNING, IN DU PAGE COUNTY, ILLINOIS. PIN#: 10-01-207-076.

h.      Real property commonly known as 16006 Donna Marie Drive, Homer Glen, Illinois 60491 legally described as:

PARCEL 1: LOT 47 IN COUNTRY VIEW ESTATES SUBDIVISION, A SUBDIVISION OF PART OF THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 24, TOWNSHIP 36 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MAY 21, 1997, AS DOCUMENT NUMBER R97-42439, IN WILL COUNTY, ILLINOIS.

PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT OF PARCEL 1 AS CREATED BY RESERVATION IN DEED FROM COLE TAYLOR BANK AS TRUSTEE UNDER TRUST NUMBER 81147 TO JOSEPH L. IMESCH, BISHOP OF THE ROMAN CATHOLIC DIOCESE OF JOLIET AS SUCCESSOR TRUSTEE UNDER THE PROVISIONS OF THE TRUST AGREEMENT DATED DECEMBER 31, 1949 AND KNOWN AS THE ROMAN CATHOLIC DIOCESE OF JOLIET TRUST DATED JANUARY 22, 1993 AND RECORDED JANUARY 6, 1993 AS DOCUMENT R93-6771 OVER THE FOLLOWING DESCRIBED

LAND: THE SOUTH 66 FEET OF THE NORTH 579 FEET OF THE WEST 425 FEET OF THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 24, TOWNSHIP 36, NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS. PIN#: 16-05-24-106-011-0000.

i.     Real property commonly known as 629-645 E. 162nd Street, South Holland, Illinois 60473 legally described as:

THE NORTH 12 RODS OF THE EAST 1/2 OF THE EAST 15 ACRES OF THE WEST 1/2 OF THE EAST 1/2 OF THE NORTHEAST 1/4 OF SECTION 22, TOWNSHIP 36 NORTH, 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. PIN#: 29-22-201-046-0000.

3.     If any of the forfeitable property described above, as a result of any act or omission by the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty,

11

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

UNITED STATES ATTORNEY

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

12